Thank you, Your Honors. My name is Tamara Lowry on behalf of Appellants Z.F. And I would like to reserve three minutes for rebuttal. This case, from Appellants' opinion, involves a systemic issue, a policy that violates the IDA's very essence on its face. And what we mean by that is that there are core procedural rights set out in the IDA for the very reason of protecting the student and his parents to avoid school districts taking actions outside of IEP meetings and things like that. So I'd like to give the Court some examples of the pervasiveness of this policy. And these are issues that are directly in the policy and on the face of the policy, interferes with these core procedural rights of parental participation, of the state put rights, and informed consent. Those are just three of the rights that we feel are interfered with. So basically, the IDA provides that a parent be given the opportunity to provide informed consent for any assessment that a student shall have. And I'm not talking about an observation, but I'm talking about actual assessments. The policy, actually, at Excerpts of Record 336, allows for children to be assessed without parental consent at any time. The IDA also provides that a student is entitled to an individual program to meet his or her unique needs. And as soon as an IEP team determines that the child is eligible, given disability criteria, that they meet the eligibility criteria, as well as the need for specialized instruction, this policy creates a waiting list or an interest list as appellees. So an individual IEP comes up and says, this kind of intensive service should be made available to the individual child. Waiting list, it's not provided. Why don't the individual parents and that individual family have something that's actionable? They do, Your Honor, and those parents have filed. Many of the parents in this case have filed already for due process and have exhausted either two of the students exhausted by full opinion and the other two exhausted by way of settlement agreements after their OEH case was filed. So why shouldn't we be dealing with those exhaustion issues? Because I understand that's the basis for the district court's disposal of the case. I guess I'm wondering why it is you're making this broad attack on the substance of the policy when we have this exhaustion barrier sitting in front of us. Because the policy continues to operate over, it acts like an overall umbrella over all of these children's programs. And so at any time, if the child isn't meeting the criteria outlined in the policy, they may be meeting all of their IEP goals on target. But if they don't meet the accelerated criteria, then a meeting is held outside the IEP process. That's outlined on pages. You're focused on attacking the policy, and I would really like to ask you to focus on the issues that I think are more directly before us. And let me put them in two ways, because I'm interested in both. One is the exhaustion issue. For what plaintiffs has the exhaustion requirement been satisfied? For what plaintiffs does the exhaustion requirement not apply? And second, who's got what claims left? Because I think one of the threads is that to the extent that claims have been resolved through an individual for exhaustion or whatever reason litigation process, then there may not be anything left for that individual to pursue here. Okay. I understand your question, Your Honor. As to the exhaustion issues, plaintiffs that have exhausted are the JH and LH twins. And so they exhausted through a full administrative due process case, wherein Judge Brown, the ALJ presiding over the case, decided that they were denied, their parents were denied actual participation in the IEP process, and she specifically stated that as to this policy did not meet the criteria for parental participation because the parents went in and would ask if they could talk about an ABA program, an applied behavioral analysis program, an intensive behavior program, and they were always directed over to the Valley Mountain Regional Center policy EIPT. So that was part of her decision in that the program does not meet the IEP. You're getting off. And so anyway, so they exhausted. They won. They won. What did they have left? They were not able to get the injunctive relief, and they're still subject to the policy. Now, did they complete the exhaustion prior to the time of the filing of the case? No, Your Honor, and the reason is we attempted to do a joint due process filing initially. Don't get into the reason. Tell me the law. Okay. It's my understanding that exhaustion is necessary in order to file. And if that's true, your exhaustion has to be complete before you file in the case or you have to go back. Now, why is it different here? A number of steps were taken before this case was filed in federal court. The two plaintiffs that I was just talking about, the JH and LH twins, were part of a joint filing at the OAH wherein the case wasn't opened or decided. I understand, and they came back and said, no, you can't have joint filing because these are individual. We have to protect these young people from public scrutiny, and it seemed like to me it was a very good idea. But go back just to this one question. The question is, do you have to have exhaustion completed before you file in order to have subject matter jurisdiction? Yes, unless you meet one of the exceptions. The answer is yes. Unless you meet one of the exceptions. So these individuals who started, who filed before it was completed, they have violated the exhaustion requirement. Well, I believe, and the reason we filed was because we believed that we actually had a systemic issue that could meet one of the exhaustion requirements as well. I understand, I believe, is a nice way to start. But give me a case, because the cases seem to be against you on the point. Well, we cited in our briefing, and we also believe that the complaint, because the complaint challenges the systemic problems that Doe, by and through Brock Hugh, versus the Arizona Department of Education, states that the problem either has to be with the due process system itself or the education system. And we think that this is pervasive enough through the education system that the policy needs to be dismantled to avoid these violations of the procedural rights of parents and children. Well, how do you distinguish Hoft? We, I distinguish Hoft in that Hoft involved, none of the people there had, if I'm recalling the case correctly, had filed anything with their Arizona Department of Education at the time that the case was brought. Here, back in 2005, prior to the filing of any of OAH complaints, prior to the filing of any of the federal complaints, ZF's mother attempted to exhaust the issues around this by filing complaints with the California Department of Education. She also filed complaints under the Lanterman Act with the regional center called 4731 Complaints of the Lanterman Act, the Welfare and Institutions Coalition. Well, under Section 1415 of the Act, it says that it has to be exhausted, quote, before the filing of a civil action, period, close quote. Exhausted. So if you start it, you have an exhausted. Well, I think that from our perspective, Your Honor, that it meets the Christopher S. criteria in that it, they, the plaintiffs went to the CDE and invoked the Edgar process. Well, Christopher S. dealt with how much time could be counted as school time. There's nothing individual there. Here, you've already indicated that by pursuing individual claims, at least the twins succeeded in obtaining a judgment or a determination by the Administrative Hearing Office in their favor. Yes, except that they're still subject to the policy, as is about 1,200 other students at least, in the Central Valley over five counties. Has the Administrator officer's decision not been put into place, not been recognized? Yes, they got the program, Your Honor, but at any point. So they got the program. So at that point in time, there's not an objection remaining that they have to pursue, is there? The policy is still in place, and it still is. Does it prevent the twins from getting the program that they're supposed to get? No. So this gets to the second question I raised. What claim do they have to pursue at this point? That the policy is still the umbrella over their program. But they're not adversely affected by the policy. So I can complain about a policy, but if I'm not adversely affected, what standing do I have to bring an action against it? They can still be assessed without parental consent. They're still being held. Have any of those things happened?  So I ask you again, what claim do they have to pursue? Well, under the case of the U.S. Supreme Court's Honig v. Doe, which was not cited in our brief, but is at 484 U.S. 305, and I'm looking at pages 318 to 320, where the state's procedures for discipline violated the student's rights and caused unilateral placement. In that case, they said that if that student was no longer even in the same school district, but because he was still residing in the state of California and because he was still subject to the state's policies, that it was not moot because it was reasonably possible that he would be subject to that policy but for the injunctive relief that they had been granted. Is there any reason to believe that the IEP prepared for the twins is going to be disregarded in favor of the policy that you object to? I believe it can be, yes. Can be? Any reason to believe that's likely? Yes, I believe it's reasonably likely that they could be assessed. I believe it's reasonably likely that the criteria is actually being used against them. One of, I mean, I know of things outside of this case that I'm not allowed to talk about that if the case were allowed to go back, I mean, we could amend our complaint and add the additional things that have happened since, and we could also show that it's ongoing and consistent. As it is for all the plaintiffs in the case, I think Your Honor wanted to know about the plaintiffs that had not exhausted through the process and possibly the two that exhausted through settlement agreements. One of the areas I think that you're making an argument that sort of rings to me is those that have settled, whether or not the exhaustion issue should prevent them from filing their lawsuit if they've settled their lawsuit. That strikes me as a strong argument. So if they've settled their IDEA case, what you're saying is there's no longer an exhaustion requirement. They can go after the other statutes that have been alleged. Right. And that's There's no exhaustion requirement with the other statutes. Once, and we consider that the, we believe from appellant's position that the settlement agreements are exhaustion of the IDEA issues. The district court used the Banks case to, you know, throw those appellants out, and basically Banks said that you had to have the agreement sanctioned by the OAH or that it had to be approved by the Office of Administrative Hearings. Okay. And that is, there is no process. You're telling me more than I need to know, but what I'm asking, who is it that settled the lawsuit? Oh, I'm sorry, Your Honor. ZF and AN. DF and? ZF and AN. KN. How about JN? AN. AN? And his was after our brief was filed, but appellees noted it, and I think we mentioned it in our, in a footnote in our report. Now, had that settlement occurred before the district court opinion or after? The AN settlement occurred after the ZF settlement occurred before. And how did the district judge handle the DF settlement? The ZF settlement, he said, was not exhaustion. Was what? Was not exhaustion. Was not exhaustion. He relied on another eastern district case. So the decision is that you want the DF settlement, if you're right on the issue, to be reversed and remanded, and that as far as AN, this is something that occurred subsequent, so you want that to remand for him to reconsider that issue? Yes. And those are the only two? On settlement agreements, correct. In this case. Yes. Why is JM down on that list? Do I misunderstood the facts on that one? I wouldn't be surprised. JM, his situation is that he worked out his issues of being excluded from the program through the IEP process, and so he is now in an ABA program under the umbrella, and, again, it's the same argument that it's not moot because he is still subject to accelerated criteria. He's still subject to being removed from the program outside the IEP process. If the court would look at pages 354 through 355, it says that a placement change will be done if the child isn't meeting the criteria of the EIBT, not their goals, and that they will then have, lays out three different types of IEP meetings where assessments and things will be done after. The IDEA promotes assessments being done and looking at everything before we change a child's placement, not after. And it happens, these notices to parents happen outside of an IEP meeting, which lends itself to predetermination because they tell the parents at a quarterly non-IEP meeting that their child is going to be basically removed from the program, and then the parents go to these IEP meetings, and that's how the process works, and that's why we think that that violates the IDEA. One of the very cornerstones is parental participation and having an IEP team consider what the child needs. I've identified, or I think you've helped us identify, at least five children who you argue have, through settlement, the IEP process, or otherwise, have exhausted their claims. Do any or all of them assert claims for damages? Yes, they all assert claims for damages, and they primarily seek injunctive relief, though, and declaratory relief. We have exhausted your time, but we'll give you a brief time for rebuttal. Thank you. This is a complicated case. I'm glad you said that. So who do we get first? Your Honor, my name is Catherine Alberts, and I represent the Stockton Rippon Defendants and the San Joaquin County Office of Education Defendants. And to address, I believe, what the questions are that the Court has regarding whose plaintiffs I am, I have Z.F., A.N., and J.M. So I will first speak about ---- I think we'll do better by remembering the issues. I have trouble with even eating alphabets. So I'll talk about settlement first and whether or not that is exhaustion. That's a good issue. Go ahead. It's not. The reason is, is that exhaustion means that you go through the OAH process, have an adversarial hearing where the ALJ judge then makes determinations, conclusions of fact and law, and if you are an adverse party, an aggrieved party under the code, then you get to come to court. Here, settlements stop the process before you get to hearing and before there's been a decision by the Office of Administrative Hearing Judge. Well, it may mean there's no IDEA claim left, but why wouldn't there be a remaining claim under the other statutes for damages? Well, under the Huff's case and under the statute, those 504 and the ADEA claims all have to be exhausted as well, and they haven't been. Why isn't it? If both sides have punted at the same time, why isn't it exhausted? Both sides said we don't need to exhaust, we're going to settle. No. Both sides said that we knew we're going to settle. We're going to settle the issues. If you look at the exact wording, we're going to we're not admitting exhaustion. What we're saying is that the claims that are settled are those that can be brought under the IDEA. The claims that are not settled are those that allege a different cause of action and are either compensable under, but are still compensable under the IDEA or at the OAH. So, sorry, are not compensable at the OAH. And that's, isn't that the point? I mean, if you have, let's call it just say ADA claim. You can't go to the Office of Administrative Hearing for an ADA claim. You can't get money for that. So what's left to exhaust? The issue. The issue. The issue has been settled because the parties have resolved what the educational plan should contain. Under, what the plaintiffs would like to do is have the district court look at a complex issue of educational policy without an administrative record. That's not the question I'm posing. I'm posing as why isn't the damages claim exhausted and hence appropriate for determination by the district court? I'm not asking can the plaintiffs bring in a theoretical challenge to the policy. That was the second question I asked plaintiff, which is who's got what claim left. But these people who have settled or who have had their claims adjudicated, and I guess those aren't yours, the twins aren't yours. But the people in those categories with regard to a damages claim, it seems to me, I'm not sure what bars their process from going further in court. The damages that they're going to, that we assume that they're going to assert, there are issues that could be remedied before the OAH. How? The OAH can't award damages? No, but the OAH can provide compensatory education that would eliminate the need for damages. The OAH can provide psychological services if they're alleging an emotional distress type situation. And the OAH can provide remedies that in part would relieve the injury that they're alleging here. They're alleging that under the ADA in 504 they have been denied access to the ABA intensive treatment. Well, the ---- And it appears for a period of time they were. And it appears for the period of time they were. And the answer to that is you get compensatory education in order to make up for the time that you were, that you did not receive ABA if that's the case. Here they haven't proven that yet because we've settled. But the IDEA claim has been resolved. So it may be that you have a defense of settlement or of release or of no further injury to be compensated for, but to the extent that there is a separate kind of monetary claim they could pursue, what's left for them to do before they're allowed to pursue that in court? If you're speaking to a separate completely noneducational injury. Emotional distress. Emotional distress. 1983. A 1983 claim. A 1983 claim. Is it emotional distress that arose out of an educationally based harm? And still it can be adjudicated by the OAH in the term of giving psychological services, which is one of the things called for under the IDEA. The cases of ---- Sorry. What's the position of this section 1415L where it says nothing in this chapter shall be construed to restrict or limit, and then it goes on to talk except under such laws relief also there is a subchapter and it says, G, of this section shall be exhausted to the same extent it would be. It seems like to me the statute actually is against you on this issue. Well, no. What that is saying is that if you're going to bring a 504 case, if you're going to bring an ADA case, you can, as long as you exhaust it if you're going to bring a cause of action or seek relief that could be found or remedied at the OAH under Rob. If they could be found or remedied. Now, the plaintiff and the administration get together and settle their case. So they're saying we've given you all you can have. Why isn't that an exhaustion that they're talking about here? Well, so your question assumes that plaintiffs are seeking completely noneducationally-based relief. No, I'm not assuming anything. What I'm assuming is that they have a right to go ahead on the other statutes, and then you determine whether or not they are cut off by some other reason, but that they have a right to proceed with the other statutes once they've settled the case with the IDA. It's up to the later court to decide whether they're foreclosed. We're talking jurisdiction. Right. In terms of 504, if they go back to the district court and you're saying then they bring up a claim that is educationally-based again, which is then they have to exhaust it first. That may happen, but it seems to me that if they've settled out under what we ask them to do to exhaust, they're at least entitled to bring the other actions because there's now subject matter jurisdiction. Now, you may be able to attack that subject matter jurisdiction. Right. We don't believe that there is subject matter jurisdiction because they haven't exhausted those claims. So your position is that settlement does what? What is it? It doesn't affect exhaustion? It doesn't affect? It doesn't affect exhaustion. Settlement ends the case is what. In terms of educational harms that they have determined in the case of these two individuals, that all claims that could have been remedied before the OAH or could have been remedied before the IDEA have been waived, have been settled and waived. All of the claims they bring in this lawsuit are, if you look at the facts, not just their conclusions, are based on OAH claims. So they've been waived. I suspect they could sign a waiver at that stage. But what is there in the law that settlement is so extensive? Is there any case yet on the issue? On that settlement is extensive as to exhaustion. Yes. The extent of settlement at the administrative level. Is there a case yet that says you can't raise any education issues in a 1983 case? There's the cases say that, that exhaustion is, settlement is not exhaustion. There's the Banks case and the Woolley case. And the reason. Where are they? Are they from our circuit? The Banks case is, it's, they're both district court cases. Is it what? It's a district court case. The Banks case is, I believe it's the northern district. Now, what's the other case? Woolley, which is, I believe, New Jersey. And. We, there's no circuits passed on this yet? No, there's no circuit precedent. Okay. The issue is, the settlement doesn't get you through and serve the purpose of exhaustion. There's no administrative. I have to advise him why that doesn't. That's encouraging the very sort of thing that we have in these cases is to reach an accommodation and a settlement. So why should there be any further requirement of exhaustion when you've settled everything? Well, I think what the, what we're having here is, if you've truly settled everything that's educationally based, such as the Witt case or the McElroy case, where the only remaining claims were based on physical abuse and monetary damages for physical abuse, then you're right, Your Honor. If the remaining claims that they're still trying to assert are these educational policy issues regarding this program and whether these students meet the educational criteria, exhaustion is needed for this court to have an, for the lower court to have an administrative record, to have the educational experts' opinions, and to give the state and the local agency to give the opportunity to address these issues first. Those are the purposes of exhaustion, none of which are met by settlement. So the district court ---- Well, what you're saying is people should never settle the case. But the idea behind settlement, as Judge Hugg indicates, is to get parties together. And it seems to me the whole idea of that administrative here, don't come to court, settle it, your problem's here. But you're indicating if they settle, they get penalties because they can't come back and sue under 1983. Well, they can't come back and sue under 1983 if they've waived those claims. And then if they bring up a different issue before the court, an educational issue before the court, yes, they have to go back and re-exhaust those. If you look at the KL v. Mercer Island case, which was just decided by this court at the end of last year, the plaintiffs, the students and the parents try to raise a whole different issue that they hadn't brought before the OAH, transitional services, under a 504 claim in the federal lawsuit. The court said no. This court said no, you have to go back and exhaust that issue of transitional services because you didn't bring it up in your OAH hearing. But this is different. This is settlement. And by the nature of a settlement, what the parties are saying is we finished our administrative areas. The government and the parents of the children have decided this is a proper way of disposing of the case. So for purposes of the Act, they've done a short circuit. You don't have to spend all the money on lawyers going around doing these things. So why still I don't have a problem. Now, if the government, through the administration, has said we're willing to settle on this, then it seems to me subject matter, there's subject matter jurisdiction to bring lawsuits in these other statutes. Well, they have, if they're based on, if those other statutes, those injuries are based on, and so you're assuming that they're not waived. If they're based on educational injuries, they still have to be exhausted. And it's going to be up to the administrative agency saying, no, we're not going to settle this because you have all of these other issues and we have to decide them. But if they, if the administrative organization punts on it, I don't see why they haven't waived, the government hasn't waived, their subsequent rights to say you've got to go exhaust. Well, the OAH, Your Honor, hasn't. This would be the school district and the parent. And what they've set aside is they've waived a certain set of claims. And to the extent that they want to bring 504 claims independent, because they haven't been remedied yet by the settlement, independent, different 504 claims that have an educational base, those haven't gone through an administration precision. Let's see if I understand. With regard to what I asked during Appellant's presentation, so what's the continuing beef, what's left? And the answer is, well, services could be taken back because no longer or in the future determined not to meet the standards. Those, you say, have not been adjudicated and so exhaustion is still required for those. You accept the proposition that to the extent that there's been a determination of the first layer of 504 issues and the possibility of monetary relief somehow through one of the other statutes, do you acknowledge that those claims have been exhausted? To the extent that they were incorporated in a settlement agreement, I still think that you're putting before the Court an incomplete record. The burden is on if the plaintiff does not, if the student and the parents do not feel that they are not getting their full burden, what they, their full redress for their injuries through settlement, then they shouldn't settle. It's also on the other foot. Well, but if you've got a settlement agreement that makes a point of saying it's limited to the scope and isn't construed as a waiver of other claims, can you really fairly read that settlement as saying, aha, but you still can't go any further? With regard to the claims? You can't go any further. On your other claims, you have to have still, if they're not covered by what's in that waiver and they are educationally based, yes, you still have to go back, because the Court will not have the administrative record, the expert opinions, and the OAH decision. Well, now that we've exhausted your time, in fact, some of your colleagues may have something they want to say. And I also have J.M. to the extent that you want to hear about that. Very helpful. J.M. is just in a tagline. What was his situation? J.M. has an IEP that's been signed. Okay. He's the IEP person. Okay. Good morning. I'm Michelle Cannon, and I represent the Modesto City School defendants, and those defendants are being sued by the, as you called them, the twins, J.H. and L.H. And I'm happy to answer questions you have or explain the reasons that we fully briefed as to why J.H. and L.H. did not exhaust their administrative remedies prior to bringing suit. I confess I'm now sufficiently confused in the alphabet soup. In a nutshell, can you tell me what the fact of the J.H. and L.H. case was? They didn't settle. They litigated. Is that right? That's right. They filed a request for due process hearing before the OAH in March of 2008, and then, of course, the underlying federal lawsuit that we're discussing today was filed in April of 2008. They went through their due process hearing, and the hearing was actually held in May and June of 2008. And then by the time we were served with the lawsuit and had to file a motion to dismiss, that was filed at the beginning of August. There was no OAH decision at the time that we filed a motion to dismiss. In fact, there was not a OAH decision at the time oral arguments were heard in this case, which was October of 2008. The OAH decision came out that fall, and, of course, the court dismissed the case, and that decision has since the dismissal become final. And you are right. One of you mentioned that the twins essentially prevailed in that case. The OAH ordered them the redress that they were seeking. The district was ordered to provide compensatory services, to reimburse the parents for evaluations that they had paid for themselves, and to reconvene a new IEP with the team to come up with an IEP that was consistent with the OAH decision for J.H. and L.H., and those things have occurred since then. Now, suppose we have a collision between the IEP that was reached for, I'll call them the twins just to avoid considering what alphabet we're talking about, and the Well, the district has to follow the OAH decision. That is an enforceable decision. The district is following that and has followed that, and there's no evidence that that has not happened. I thought I heard from appellants' counsel that, well, they won, but they haven't won. They haven't gotten what they were supposed to get. They have gotten what they were supposed to get. I believe what appellants' counsel was alluding to is that there's nothing to stop the district from willy-nilly using this policy again for these students, but I they will not be following the OAH decision, and there are remedies that can be in place for that. And I was going to say, and what's interesting is, remember, each year a student can have a new IEP, so what was appropriate for these students this year may be different this year, and it may be different again next year. So regardless of the fact that the policy may seem to exclude the parents from the process, IDEA and the IEP requirements, from your perspective, will trump or at will trump parental participation in the creation of the IEP for each succeeding year. That's right. So what is your perception as to what, if any, claim remains for the twins? I believe no claim remains for the twins, because they went through their administrative process, they got the remedies and the redress that they were seeking, and they've essentially been made whole. Now, in the complaint at least, there's an allegation, albeit in very broad terms, of monetary injury and a prayer for monetary damages. Is it at least theoretically possible that either the twins or their family have remaining monetary claims they could pursue under other statutes? I don't believe so. The district was ordered to reimburse the parents for their out-of-pocket expenses for evaluations, which has occurred, and the district was also ordered to pay attorneys' fees for the twins' costs of going through that administrative proceeding, and that has also occurred. So they would have remaining claims for money. So they would have subject matter jurisdiction to file under another statute, but there would be a defense, is that right, that there's no damages? That's essentially correct. If they wanted to file a 504 complaint or something like that at this point, they'd exhausted their administrative remedies. But as you just said, the question would be what damages or harm are they alleging at this point. They wouldn't be able to allege, but they'd have subject matter at least to file. Going prospectively, they would have subject matter jurisdiction. What they're arguing, though, is since they've exhausted now, go ahead and act as if they exhausted way back in the beginning before they filed this case last spring, and that's not how it works. And clearly at the time we filed our motions and the district court was making this decision, they had not exhausted their administrative remedies. So that your position is because they hadn't exhausted on a timely basis before filing the Federal court lawsuit, that ends it. That doesn't preclude the possibility of them filing again if, in fact, they choose to assert monetary damages that have not been the subject of recompense already. But you doubt factually that would turn out to be the case. I do, because they've obtained the relief that they were seeking. And are they the only two that you're responsible for? They are. So with that, I'll be done. Thank you. Would they have to file again, or isn't that in their complaint now? If they wanted to go on and seek monetary damages, I think they would have to file again, because their complaint, there was no subject matter jurisdiction since they had not exhausted those remedies at the time that complaint was filed last spring. Thank you. This is sort of like the Stimulus Act. We're well into deficit spending, but it is helpful for us. So. Briefly, Your Honor. Daniel Newman of Safar Shaw for the Valley Mountain Regional Center. And the two employees. Who do you represent? I'm sorry. The Valley Mountain Regional Center. And its two employees, Richard Jacobs and Tara Sizemore Hester. If I understand your, so we can cut to the chase, if I understand your argument, you're a private organization. Yes, Your Honor. And your argument is that there's no jurisdiction in the Act over you as a private organization, so there's nothing to exhaust under that statute. That would be true, Your Honor. The IDEA, in fact, enumerates a quite extensive list of agencies and public entities which can be named. And the Valley Mountain Regional Center, as a private nonprofit, 501C3, is none of those. It is not a state education agency, a local education agency, a public charter school, or a state or local correctional or juvenile correctional facility, nor is it an education service agency. We simply fall outside the ambit of the IDEA. That's the record here. And further, as in this case, what's, in fact, happened is that the appellees have additionally sued Mr. Richard Jacobs, the executive director of the Valley Mountain Regional Center, and Tara Sizemore Hester, the coordinator for autism services of the center. And I believe the precedent cited to the court, including the Diaz-Fonesco case from the First Circuit, points out that there is no individual liability. In addition to there not being a viable claim against the Valley Mountain Regional Center, there can be no claim against its two employees who are, of course, employed by that private entity. Okay. Assuming you're right on all that you've said so far. Okay. I suspect, then, as a private organization, you could be sued under some other statute if there's jurisdiction. What you're saying is that you shouldn't be embroiled in all of this administrative thing because the Act has no jurisdiction over you. That's correct, Your Honor. So what should have been the district court handle your case? The district court handled the case by granting the dismissal in our favor and pointing out the record below is consistent with that in that to the extent there was any claim at the OAH prior to getting to the district court, regardless of what the maturity was of the various claims below. In fact, the OAH had dismissed the Valley Mountain Regional Center because it did not have jurisdiction over it. Well, he said that none of them have jurisdiction. There's no subject matter. But he did, in addition to, did you get caught in this web, or did the district court specifically say that your client, there's no jurisdiction because you're not involved with the statute? That's correct, Your Honor. He did do that.  We shouldn't have been there, and I think that was the determination of the court. So we don't have to reverse and remand for him for a different judgment. If you're right, you're out for that reason, and then you have to stand by and see if they're going to sue you on some other basis.  Okay. Thank you, Your Honor. Next. Is there anybody else? Good morning, Your Honor. I'm John Kelly for the Stanislaus County Office of Education and Appellants. I'll be very brief. Z.F. is the plaintiff who was related to my client, though I'm not sure even that's true. I thought it was E.R. I'm sorry, E.R. You're right. I'm getting lost in alphabet soup. The facts for E.R. alleged in the complaint is that she was assessed by an employee named Margo of a private company who's not part of this case, and that that private company sent Margo by another public entity, which is not us. I don't know why we're involved in that other than eventually E.R. was going to come to our district, but it hadn't at the time of this case. As the footnote in the opening brief states, there are no educational issues with E.R. E.R. has all the educational services E.R. deserves, and plaintiffs admit that in their opening brief and their reply brief.  And how the Stanislaus County Office of Education caused that is unknown. But if that happened, and if we somehow could be related, there's exhaustions in front of the OAH which could have occurred to determine a record, to determine if there's a systemic policy or problem, and to determine what our involvement is. And that was never done. E.R. never attended any exhaustion whatsoever with the OAH. Well, not part of the joint filing, not part of settlement, not part of anything. It was never even attempted. Roberts. Was your agency or agencies, your defendants, were they identified as defendants in the joint filing, in the attempted joint filing? No. And none of the joint filings had this issue of alleged assessment without parental consent. That wasn't even, they all had different educational issues. So this issue has never even been attempted in front of the OAH on, for any of the plaintiffs, and certainly E.R. had no attempt whatsoever. Any questions? I'm sure you wouldn't have wanted to miss the party, so. Were you involved at all with J.M.? No. As far as I know, that's exhausted the appellee's side. I'm going to turn to the appellant. I've got a broad field to deal with, and we've already taken you over, but we'll give you a little time to respond to what you consider to be the most important comments. I'd like to ask one question, just to clarify in my own mind. Okay. Do you agree with the statements that were made by Valley, Mountain Regional Center? No, Your Honor, and I was going to address that. The judge dismissed Valley, Mountain Regional Center because he would not invoke supplemental jurisdiction over the state law claims under the Lanterman Act. He never specifically said in his order that he had no jurisdiction over Valley, Mountain Regional Center, as far as I can remember. However, he might have said that they are a private entity. But we could refile and amend to bring a Title III of the ADA claim, which allows us to reach an entity who practices discrimination in connection with public agencies as well. He didn't object that he couldn't be sued again, but what he's saying is he doesn't believe it shouldn't be in this case because there's no jurisdiction under the Act. Well, if we reach the exhaustion, if we have been determined to exhaust, then we believe we can reach them through supplemental jurisdiction, possibly over the state law claims. Because they're claiming they are a private entity, the Eleventh Amenity would not apply. So they would be subject then to those supplemental claims. Plus, we believe we can reach them through Title III, which would be best brought through an amendment if we're allowed to go back, if the case is remanded. Where in the brief did you make that argument? I can give you the site. It's squeezed into the very end of the gray brief, I vaguely recall. Yeah. Is that all you have for these folks? For Valley, Mountain Regional Center? Yeah. Yeah, at the moment, that's all I have. Okay. So one of the things that the district court said about JH and LH is that they needed to be sent back to OAH because the judge reached the issue on a procedural level due to the parental participation but not on the substantive level. And so that was a concern for us because we felt we would be precluded from the court would say we still didn't have jurisdiction over JH and LH. And as this court's precedent and the IDEA sets forth that if a procedural violation is harmful enough, the court below does not have to reach that. All of these issues were raised in the JH and LH cases as well as we initially raised in the joint complaint as well as in all of the cases that were filed before the OAH, which is ZF. JH, LH, and AN eventually raised issues of disability discrimination. OAH does not have the power to hear those. Any claims or damages that could be had from 504 regards to the discriminatory effects of the policy. We raised the request for injunctive and declaratory relief. We were told by the OAH no power to grant that. So literally... We're speaking now of the twins, right? Yes. Okay. I think I now understand that through the IEP that is in effect, they are obtaining the services that is subject to this whole action. Is that correct? They are obtaining the services. That's correct. There may be a difference of views as to what might happen in the future, but at least we've heard from the school district or the county or that side of the ledger that they feel that they're compelled to comply with the OAH decision, and as this thing unfolds in subsequent years, and litigation being what it is, we're probably in a subsequent year. But in any event, the IEP will have to be adhered to whatever is contained in the IEP, and the parents have to be allowed to participate in that process. Is that incorrect? No, that is not incorrect, Your Honor, except for we know that the criteria is being applied to them now in subsequent IEP meetings that just happened last fall. And I want to address the fact that counsel stated that we did not have a decision in the JH and LH cases at the time of the hearing on the motion to dismiss, and that is not true. Those decisions were issued in August. While they were not issued before their motions to dismiss were filed or before we filed the case in April, the OAH judge did issue those decisions in August of 2008, and the district court was aware that there was only about 30 days left before they were final decisions at the time of the motions to dismiss. And I guess my question is – And they were not appealed by the school district. Is that correct? No, they were not. So what was announced by the hearings officer wound up being the final decision? Mm-hmm. Okay. And then finally, ER, in regards to her case, she does not have any FAPE issues per se. She has a signed IEP, but at any point in time, she is still subject to those provisions, again, you know, capable of repetition yet evading review on the harm. That's why we're seeking the injunctive relief for her. And her parents, to this day, have never really been provided with any information about Margo's last name. We don't really know who employed Margo except that she had an IEP in place. She was a student receiving services under this EIBT program, and she was assessed. Her grandmother didn't provide permission. She just let her in because she didn't know that there's so many people coming and going in the house with these programs. She didn't know that she wasn't part of the program. So that's a real concern, and it could happen again at any time. And so she didn't have any FAPE issues to exhaust per se. It's a procedures. Which children were involved in the settlement? ZF, Zebra, Frank, ZF, and Ann, like Apple and Nut. Those were the two that were involved in the settlement agreements. J.M., was that the one that reached an IEP? Yes. Eventually reached an IEP and is still subject to the umbrella of the policy. So I guess, let me just see. I think I've said just about everything. I mean, we believe that we have an extensive administrative record. We believe that the disability discrimination issues of ADA 504 and our 1983 claims have not been addressed, and we'd like the opportunity to go back and do that. We hope this Court finds that we did exhaust, we made many attempts to exhaust, and that the case be remanded. Let me see if I make sure. I just want to get your position. Sure. As far as this Act is concerned, what's your position on whether the Act has jurisdiction over the Valley Mountain Regional Center? Of the IDEA? It's an interesting problem, Your Honor, with Valley Mountain Regional Center in that they provide Part C funding to students under the IDEA. So they are the agency from zero to three that handles, and at the time we filed ER's issue, she was a student whose funding was being provided by Valley Mountain Regional Center, and the documents we have show that she was also, that the funding was also being provided by Stanislaus County Office of Education. From a judicial point of view, does the Act cover Valley Mountain Regional Center? Not the over three children, but the under three children it does, and we believe that they inserted themselves in the process and have violated state law that we could seek the supplemental jurisdiction over them. But IDEA specifically. I have this question about jurisdiction, how it would play out in the plan. Do you think there is jurisdiction or is not? I argued before the District Court that there was jurisdiction for the birth to three children, and at the time we filed ER's as part of this, she was under three. Has there been an appellate court, federal appellate court that has made that decision? No, no one has made that decision. There are decisions that have been determined that Valley Mountain Regional Center is a private entity, like you said, a 501c3 private entity, but it's a weird entity in that it accepts many federal dollars, state dollars to provide services. I understand that. I don't know the answer. The statute doesn't seem to include them, that's the problem. Well, I mean, the statute, I don't think the IDEA federal statute really determines how and who within the state is going to provide different parts of services, so I don't think it really addresses when you have a split like we do in California where the regional centers provide the birth to three services under Part C and then the school districts provide the Part B services. So it's kind of a different, strange situation. OAH doesn't have any jurisdiction over it either. No, not under that act, no. And so that was the reason they were dismissed from every case that we filed. Okay. Thank you. Thank you very much. Thank you. Thank all counsel for the arguments. This is a most complicated case and they've been helpful. That concludes the calendar for today. We are adjourned.
judges: Wallace, Hug, Clifton